DENNIS P. RIORDAN (SBN 69320)
E-mail: dennis@riordan-horgan.com
DONALD M. HORGAN (SBN 121547)
GARY K. DUBCOFF (SBN 168089)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA  94102
Telephone: (415) 431-3472
Fax: (415) 552-2703

Counsel for Petitioner
MARVIN VERNIS SMITH

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| MARVIN VERNIS SMITH, | Case No. CV 11-01076 ODW (MRW) |
| Petitioner, | **PETITIONER'S VERIFIED TRAVERSE TO RESPONDENT'S ANSWER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| RAUL LOPEZ, Acting Warden, | |
| Respondent. | |

# TABLE OF CONTENTS

PETITIONER'S TRAVERSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

VERIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . 4

REPLY TO RESPONDENT'S STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . 6

REPLY TO RESPONDENT'S STATEMENT
OF "THE AEDPA DEFERENCE STANDARD" . . . . . . . . . . . . . . . . . . . . . . . . 8

REPLY TO RESPONDENT'S ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.      PRELIMINARY NOTE RE JUDICIAL ESTOPPEL. . . . . . . . . . . . . . . . 12

II.     THE TRIAL COURT VIOLATED PETITIONER'S
        DUE-PROCESS RIGHT TO ADEQUATE NOTICE BY
        INSTRUCTING THE JURY ON A FACTUALLY
        UNSUPPORTED VICARIOUS-LIABILITY THEORY,
        INTRODUCED INTO THE CASE FOR THE FIRST TIME
        FOLLOWING THE CLOSE OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . 15

III.    THE TRIAL COURT'S INSTRUCTING ON A LEGALLY
        INADEQUATE THEORY PERMITTED THE JURY TO
        CONVICT PETITIONER OF MURDER WITHOUT FINDING
        ESSENTIAL ELEMENTS OF THAT OFFENSE, THEREBY
        VIOLATING HIS CONSTITUTIONAL RIGHTS TO DUE
        PROCESS AND A FAIR TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

-i-

# TABLE OF AUTHORITIES

## CASES

*APL Co. Pte. Ltd. v. UK Aerosols Ltd.*,
582 F.3d 947 (9th Cir. 2009) ........................................................ 14

*Atley v. Ault*,
21 F.Supp.2d 949 (S.D.Iowa 1998) ............................................. 12

*Bowen v. Johnston*,
306 U.S. 19 (1939) ........................................................................ 12

*Brown v. Allen*,
344 U.S. 443 (1953) ...................................................................... 12

*Calderon v. Prunty*,
59 F.3d 1005 (9th Cir. 1995) ....................................................... 24

*Crane v. Kentucky*,
476 U.S. 683 (1986) ...................................................................... 23

*Delgado v. Lewis*,
223 F.3d 976 (9th Cir. 2000) ....................................................... 12

*Gray v. Raines*,
662 F.2d 569 (9th Cir. 1981) ....................................................... 24

*Harrington v. Richter*,
562 U.S. __, (2011) ......................................................................... 9

*Henderson v. Walls*,
296 F.3d 541 (7th Cir. 2002) ....................................................... 12

*Lainfiesta v. Artuz*,
253 F.3d 151 (2d Cir. 2001) ......................................................... 12

*Lambert v. Blodgett*,
393 F.3d 943 (9th Cir. 2004) ....................................................... 21

*Lara v. Ryan*,
455 F.3d 1080 (9th Cir. 2006) .................................................... 7, 8

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ........................................................................ 9

*Morrison v. Estelle*,
981 F.2d 425 (9th Cir. 1992) ....................................................... 24

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987) ........................................................................ 23

**Table of Authorities continued**

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir. 1990)                                    14

*Singh v. Prunty*,
142 F.3d 1157 (9th Cir. 1998)                                    30

*Slack v. McDaniel*,
529 U.S. 473 (2000)                                               9

*Stephens v. Borg*,
59 F.3d 932 (9th Cir. 1995)                                      24

*Strickland v. Washington*,
466 U.S. 668 (1984)                                             23

*United States v. Carter*,
236 F.3d 777 (6th Cir. 2001)                                    28

*United States v. Sanchez*,
10-50192, Slip Op. 19808 (November 1, 2011)                     28

*Whaley v. Belleque*,
520 F.3d 997 (9th Cir. 2008)                                    14

*Williams v. Taylor*,
529 U.S. 362 (2000)                                             10

**STATUTES**

141 Cong. Rec. S7826 (daily ed. June 7, 1995)                   11

28 U.S.C. § 2254(e)(1)                                  7, 8, 10, 21

AEDPA,The Antiterrorism and Effective Death
Penalty Act, Pub. L. No. 104-32,
110 Stat. 1214 (Apr. 24, 1996)                                   9

# PETITIONER'S TRAVERSE

Petitioner Marvin Vernis Smith (hereinafter "Smith" or "petitioner"), by and through his undersigned counsel, hereby files this Verified Traverse to Respondent's Answer (doc. 9-1, filed Sept. 7, 2011).

## I.

Petitioner herewith reasserts each and every factual and legal claim in his Verified Petition for a Writ of Habeas Corpus (doc. 1, filed July 19, 2011) and supporting Memorandum of Points and Authorities (doc. 7, filed Aug. 31, 2011). Petitioner also incorporates by reference into this Traverse the contentions of fact and law contained in the Memorandum of Points and Authorities in support of the Traverse, *infra*.

## II.

On the basis of the materials identified in paragraph I, above, petitioner specifically denies the statement contained in paragraph I of Respondent's Answer that he is lawfully in the custody of Respondent. Petitioner further denies each and every contention of fact and law asserted in Respondent's Answer and supporting Memorandum to the extent it is inconsistent with the factual and legal contentions contained in his Petition, Traverse, supporting Memoranda, and all related case materials.

III.

ACCORDINGLY, petitioner respectfully requests that this Court (1) issue a writ of habeas corpus to have petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint; and (2) grant such additional relief as may be appropriate and dispose of the matter as law and justice require.

DATED: November 2, 2011                    Respectfully submitted,

                                           DENNIS P. RIORDAN
                                           DONALD M. HORGAN
                                           GARY K. DUBCOFF

                                           RIORDAN & HORGAN

                                           By  /s/ Dennis P. Riordan
                                                   Dennis P. Riordan

                                           Attorneys for Petitioner
                                           MARVIN VERNIS SMITH

## **VERIFICATION**

I, Dennis P. Riordan, hereby declare as follows:

1.  I am an attorney and a member in good standing of the State Bar of California and the Bar of this Court.  I am counsel of record for petitioner Smith in these habeas proceedings.

2.  My offices are in San Francisco County.  In my capacity as attorney for petitioner, I am making this verification on his behalf because he is incarcerated in a state prison facility in Corcoran, California, and because these matters are as much within my knowledge as petitioner's.

I have read the foregoing Traverse, and declare that its contents are true to the best of my knowledge.

Executed this 2nd day of November, 2011, at San Francisco, California.


  /s/ Dennis P. Riordan
Dennis P. Riordan

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This case definitely has its surreal qualities.  The state appellate court first found that Smith's murder conviction was a miscarriage of justice (Lodgment 6);[1] then the court found, on the same facts, that it was not (Lodgment 10).  That court first found that the legal errors contained in the vicarious-liability instruction (which should never have been given as an initial matter) supported the conclusion that a reasonable likelihood existed that the jury misapplied the instruction (Lodgment 6 at 10-11); then the court found, again on the same facts, that they did not (Lodgment 10 at 14-16).  That court first found that the jury's focus during deliberations on the evidence of petitioner's physical inability to have carried out the fatal attack – the subject of a jury note and the very focus that the prosecution sought to combat with its belated vicarious-liability instruction – was supportive of a finding of prejudicial error (Lodgment 6 at 10); then the court found that it was not (Lodgment 10 at 8-9).

The prosecutor expressly told the trial court that he was relying on the vicarious-liability theory (which he had first introduced into the proceedings

---

[1]  Respondent filed the state court record with this Court on September 7, 2011, and designated its various components by number.  (*See* doc. 10.)  For the Court's convenience, petitioner will include herein references to those designated numbers.  Thus, for example, the state appellate court's first opinion was listed as document no. 6 in respondent's listing (*see* doc. 10 at 2), and will be referenced herein as Lodgment 6, consistent with respondent's approach.

following the close of evidence) (Lodgment 2 at 16 RT 3034); the state asserts in its answer memorandum that the prosecutor was not relying on that theory (Answer Memo. at 18, 20).  The prosecutor asked for an instruction on that theory (and the trial court agreed to give it) expressly because the prosecution justifiably feared that a reasonable jury could acquit Smith on the presented evidence by rejecting the prosecution theory that he had personally murdered his wife (Lodgment 2 at 15 RT 2882-87);[2] the state now asserts that the evidence that petitioner was the killer was so overwhelming that no reasonable juror could have rejected that theory (Answer Memo. at 18-19).

These about-faces could give one vertigo, but what they indicate, and tellingly so, is that the state's current position is not well taken.  There is no intellectually rigorous, or perhaps more to the point, "fairminded" defense of the errors underlying petitioner's claim, which explains all of these inconsistent positions.  The state's current position is entirely belied by the record, and the stubborn facts evinced therein convincingly establish that Smith is entitled to habeas relief.

//

---

[2]  The state appellate court characterized Smith's defense to the direct-perpetrator theory as "arguably successful."  (Lodgment 10 at 9.)

## REPLY TO RESPONDENT'S STATEMENT OF FACTS

Respondent's statement of facts consists of a verbatim repetition of a portion of the state appellate court's decision (Answer Memo. at 2-5) with the addition of the following prefatory paragraph:

> Under the AEDPA, a state court's factual determinations are presumed to be correct unless the petitioner has rebutted the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Lara v. Ryan*, 455 F.3d 1080, 1082 (9th Cir. 2006) (adopting California Court of Appeal's unchallenged summary of facts).  The following facts of the crime have been taken verbatim from the Court of Appeal's second unpublished opinion (Lodgment 10), following the California Supreme Court's remanding the matter."

(*Id.* at 2.)  The implicit suggestion of that paragraph is that the state appellate court's recitation of facts in an unpublished decision has become, by some unstated process of transmutation, findings of fact to which this Court must defer. Nothing could be further from the truth.

In its *Smith* decision, the state appellate court summarized the state's evidence over the course of some three pages; it dedicated its last paragraph to the

defense case.  (Lodgment 10 at 2-5.)  The court, quite obviously, did not attempt to write a thorough or balanced summary of the trial evidence, nor was it making any findings with respect thereto.  No federal court has ever held that a state court's description of the record in a published decision, let alone an unpublished one, is a "factual finding" for purposes of either 28 U.S.C. § 2254(d) or § 2254(e)(1).  The lone case cited by respondent apparently in support of that novel proposition, *Lara v. Ryan*, 455 F.3d 1080, says no such thing.  The *Lara* court at no time deferred to any fact set out in the state appellate court's short summary of the trial evidence that it quoted; its decision turned entirely on the undisputed fact that the jury had convicted the petitioner of attempted murder, which made it certain that petitioner's claim, namely, that the jury had not rested its verdict on a constitutionally infirm theory, was meritless.  *Id.* at 1086-87.  That is a far cry from the use to which respondent now seeks to apply that case.

In short, deference to the state court is due where it is required by law and warranted by the circumstances.  There is *no* authority that permits this Court to accept as presumptively true, or accord any deference to, a selective evidentiary summary contained in a state appellate court's unpublished opinion.

//

//

# REPLY TO RESPONDENT'S STATEMENT
# OF "THE AEDPA DEFERENCE STANDARD"

Respondent next sets out the guiding principles of federal habeas review (Answer Memo. at 5-8), offering selected quotations and seeking to create the illusion that the writ of habeas corpus is essentially a dead letter.  Such extreme harshness in reviewing state habeas claims is not mandated by AEDPA,[3] however, which, though it indeed established deferential standards of review, did not establish insurmountable ones.

As the Supreme Court recently reaffirmed, "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ. . . ." *Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). That statement, which began the *Harrington* opinion, is entirely consistent with the Court's previous affirmations.  *See, e.g., Miller-El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief."); *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (noting habeas corpus

---

[3]  The Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104-32, 110 Stat. 1214 (Apr. 24, 1996).

continues to "play[] a vital role in protecting constitutional rights"); *Williams v. Taylor,* 529 U.S. 362, 379, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("A construction of AEDPA that would require the federal courts to cede th[eir] authority [to interpret federal law] to the courts of the States would be inconsistent with the practice that federal judges have traditionally followed in discharging their duties under Article III of the Constitution.").[4]

The Supreme Court has expressly *rejected* a construction of the "unreasonable application" standard of 28 U.S.C. § 2254(d) that equated it to an application of federal law "in a manner that reasonable jurists would all agree is unreasonable." *Williams,* 529 U.S. at 409.

> [T]he federal habeas court should not transform the
> inquiry into a subjective one by resting its determination
> . . . on the simple fact that at least one of the Nation's
> jurists has applied the relevant federal law in the same
> manner the state court did in the habeas petitioner's case.

---

[4] *See also id.* at 389 (AEDPA "does not require [federal courts] to defer to the opinion of every reasonable state-court judge on the content of federal law.  If, after carefully weighing all the reasons for accepting a state-court's judgment a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail.  Otherwise the federal law as determined by the Supreme Court of the United States might be applied by the federal courts one way in Virginia and another way in California.").

> The "all reasonable jurists" standard would tend to
> mislead federal habeas courts by focusing their attention
> on a subjective inquiry rather than on an objective one.

*Id*.  The Court's view is entirely consistent with Congressional intent motivating AEDPA's  enactment.  *See, e.g.,* 141 Cong. Rec. S7826 (daily ed. June 7, 1995) (statement of Sen. Hatch) ("There are many bright people who think that . . . we do not need Federal habeas corpus.  But I'm not arguing that position.  We have provided for protection of Federal habeas corpus, but we do it one time and that is it.").

We still, indeed, need the protection of federal habeas corpus, and Smith is asking for it this one time.  The manner in which the state obtained his conviction in this case – ambushing him with a new theory of culpability against which he had no opportunity to defend himself[5] – is unconscionable, offending the most rudimentary constitutional principles underlying our criminal justice system.  This Court's "vigilan[ce]" and "independen[ce]" is necessary to protect Smith against the glaring denial of fundamental due process that he suffered.

"It must never be forgotten that the writ of habeas corpus is the precious

---

[5]  Making matters even worse, that theory was conveyed to the jury in a legally erroneous and confusing manner that carried the grave risk of jurors finding him guilty without finding essential elements of his charged crime.

safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen v. Johnston*, 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455 (1939). It is the "basic safeguard of freedom in the Anglo-American world." *Brown v. Allen,* 344 U.S. 443, 512, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *see also Atley v. Ault*, 21 F.Supp.2d 949, 953 (S.D.Iowa 1998) ("The importance of the 'Great Writ' of habeas corpus is almost impossible to overstate."). It is because this is so that federal courts cannot, and must not, act as rubber stamps in those instances where, as here, state courts have so obviously failed to remedy constitutional error. *See Delgado v. Lewis,* 223 F.3d 976, 979 (9th Cir. 2000) ("nothing in AEDPA requires federal courts to turn a blind eye to state proceedings or to rubberstamp them"); *Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002) ("AEDPA does not provide for the *Chevron* deference afforded administrative agencies."); *Lainfiesta v. Artuz,* 253 F.3d 151, 155 (2d Cir. 2001) (although "state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable," that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence") (citations and internal quotation marks omitted).

As established in Smith's Petition (doc. 1) and supporting Memorandum (doc. 7), and as will be further discussed below, his is one of the few cases that

comfortably pass through AEDPA's gateway tests, and that question should not be a close one.

## REPLY TO RESPONDENT'S ARGUMENT

## I.   PRELIMINARY NOTE RE JUDICIAL ESTOPPEL

Following the close of evidence, the prosecutor evaluated the state's case and found it wanting.  He, consequently, asked for and secured instruction on a vicarious-liability theory that had never once been articulated or even hinted at either before trial or during its evidentiary phase, and obtained the conviction he had feared losing.  Smith had no opportunity to defend against that new theory. That is true beyond cavil, despite some insupportable, objectively unreasonable statements to the contrary by the state appellate court.  Although the prosecutor specifically urged the jury to follow this new route to conviction, the state now asserts, with misplaced assurance, that the jury did not.

The state ought properly, however, to be judicially estopped from making its current argument – it is exactly the opposite of what it had argued in state court. There, it took the position that substantial evidence existed of aiding-and-abetting liability – it would not otherwise have been entitled to an instruction on that theory.  Here, it argues that there was no evidence at all to support that theory and, therefore, no reasonable juror could have relied on it.  A party is not free to adopt

plainly inconsistent positions in legal proceedings merely to serve its strategic advantage, and this Court ought not to permit it.  *See, e.g., APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 958 (9th Cir. 2009) ("The doctrine of judicial estoppel may be invoked to prevent a party from taking inconsistent positions in the same litigation.") (citation and internal quotation marks omitted); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (noting that judicial estoppel applies where a party makes an assertion in a legal proceeding that directly contradicts an earlier assertion).

In *Whaley v. Belleque*, 520 F.3d 997 (9th Cir. 2008), the court applied the judicial-estoppel doctrine to reverse the denial of habeas relief.  There, the state had secured the dismissal of the petitioner's claim in a state appellate court by arguing its mootness.  It then argued in federal court that the claim was procedurally defaulted because the claim was not really moot and, therefore, petitioner had failed at his obligation to appeal the state appellate court's dismissal to the state supreme court.  The Court of Appeals was not impressed.  "We may not allow the state to represent in federal court the opposite of what it represented to the state court when it succeeded in defeating [petitioner's] claim." *Id.* at 1002.

That is precisely what the state is doing herein.  It represented to the trial court (Lodgment 2 at 15 RT 2882) and the state appellate court (Lodgment 6 at 6) that substantial evidence existed to justify the vicarious-liability instruction.  It

secured the trial court's agreement and, defeating petitioner's objection, the trial court gave that instruction.  The state now argues for its strategic advantage that, after all, no such evidence supported it and the instruction was essentially meaningless.  Having previously maintained the precise contrary, it should not now be heard to change its position.

The same is true regarding respondent's claim that the state did not rely upon the aiding-and-abetting theory in closing argument.  (Answer Memo. at 18 ("While the prosecutor briefly referred to the aiding-and-abetting theory, he did not rely upon it in his argument . . ."); *id.* at 20 ("the prosecutor did not rely upon the theory").)  As Winston Churchill one said, rarely has the complete opposite of the truth been stated with greater precision. That admission that the prosecution was relying on the vicarious liability theory came directly from the horse's mouth.  (*See* Lodgment 2 at 16 RT 3034 ("The Court: . . . .  Let me ask you, Mr. Murray, is aiding and abetting a theory that you are relying on in this case?  Mr. Murray: Yes, Your Honor.").)  Again, the state should not be permitted to repeatedly change its litigation positions to gain strategic advantage.[6]

---

[6] Respondent's arguing overwhelming evidence of guilt (Answer Memo. at 18-19) is similarly inconsistent with the state's previous position.  If the evidence had been so overwhelming, the prosecutor never would have requested the aiding-and-abetting instruction.  It was precisely because he believed otherwise that he made that request.

## II. THE TRIAL COURT VIOLATED PETITIONER'S DUE-PROCESS RIGHT TO ADEQUATE NOTICE BY INSTRUCTING THE JURY ON A FACTUALLY UNSUPPORTED VICARIOUS-LIABILITY THEORY, INTRODUCED INTO THE CASE FOR THE FIRST TIME FOLLOWING THE CLOSE OF EVIDENCE

Smith raises a single habeas claim, namely, that the trial court's instructing the jury on aiding-and-abetting liability violated his due process rights. (Petition at 5.) In support thereof, he explained how he had been ambushed by the prosecution's seeking and securing this instruction only after the close of evidence because, until that juncture, the prosecution had proceeded solely on a direct-perpetrator theory. (*Id.*)

There are several aspects to the claim – in addition to the cited ambush problem, there was (a) a second ambush (*i.e.*, the prosecutor waited until his rebuttal closing argument to urge the jury to return a verdict on his newly minted aiding-and-abetting grounds); (b) no evidence of accomplice liability, (c) an *erroneous* recitation of the aiding-and-abetting pattern instruction that permitted the jury to return a verdict of guilty of first-degree murder without finding essential elements of that offense; and (d) an insupportable instruction on the doctrine of withdrawal. Petitioner began by addressing the clearest constitutional

problem, namely, that he had been denied the opportunity to defend himself against the prosecution's tardily enunciated aiding-and-abetting theory.  (*See* Petition, Attach. A (beginning with the statement: "In violation of petitioner's right to timely due process notice of the accusations against him, the trial court overruled petitioner's objections and instructed on an aiding-and-abetting theory of liability injected into the case only by the prosecution after the evidence closed, an error of constitutional magnitude in and of itself.").)  He also began the argument section of his supporting Memorandum of Points and Authorities (doc. 7), filed one week before respondent filed his Answer, by addressing in detail the fatal lack-of-notice problem (*id.* at 24-65).

Yet, despite all that, respondent entirely ignores the elephant in the living room, that is, the absence of notice sufficient to have permitted Smith to defend himself against a vicarious-liability theory.  Respondent's failure to muster a single word in response to the notice issue speaks volumes – it is, in essence, a concession that there *is* nothing that can be said.

Rather than respond to the claim actually made, respondent creates a straw man and responds to an entirely different argument.  At the end of his Answer Memorandum, he transmutes the notice issue into one of prosecutorial misconduct and then argues that such a claim is procedurally barred (Answer Memo. at 24-25), and is meritless in any event under prosecutorial-misconduct principles (*id.* at 25-

28).  This entire argument is irrelevant – the claim is one of inadequacy of notice, not prosecutorial misconduct.  As a result of respondent's misplaced efforts, this Court will find no discussion in the Answer Memorandum of the due process notice cases of the United States Supreme Court relied upon by petitioner as the clearly established law that was unreasonably applied by the state courts, or of the cited circuit authority applying those cases.  (Petition Memo. at 35-43.)  It will find no argument in the state's answer that the controlling constitutional principles regarding adequate notice were reasonably applied.  It will also find no effort by the state to explain how the two findings of the state appellate court upon which this claim turned – that petitioner had received an adequate opportunity to rebut the aiding-and-abetting theory, and that he had been meaningfully informed of that theory prior to trial – were reasonable determinations.

It may be helpful to this Court to follow the genesis of respondent's straw man.  On direct appeal, petitioner's first argument with respect to this claim was that the lack of adequate notice of the vicarious-liability theory and the absence of sufficient evidence to warrant an instruction on that theory violated his due process rights.  As he put it in a subheading in his opening brief, "The Aiding and Abetting Instructions Were Not Supported by Adequate Evidence, and the Injection of the Theory Into the Case at the Eleventh Hour Violated Due Process." (Lodgment 3 at 31.)  In the course of discussing the prejudice of those errors,

petitioner contended that such prejudice was exacerbated by prosecutorial

misconduct *in closing argument*, that is, the withholding of the aiding-and-

abetting argument until the juncture that prevented petitioner's counsel from

responding.  (*Id*. at 35-37.)  As petitioner stated the claim in his heading, "THE

COURT ERRED IN INSTRUCTING ON AIDING AND ABETTING

LIABILITY; THE PROSECUTOR'S MISCONDUCT *DURING REBUTTAL*

*ARGUMENT* COMPOUNDED THE PREJUDICE OF THE COURT'S ERRORS;

REVERSAL IS REQUIRED."  (*Id.* at 22, emphasis added.)  Petitioner at no time

advanced the argument that the prosecutor's asking for the vicarious-liability

instruction only following the close of evidence was prosecutorial misconduct.

He, rather, contended that, "by waiting until the eleventh hour to announce he was

going to rely on that theory, prosecutor Murray engaged in 'trial by ambush' in

violation of Smith's right to due process notice."  (*Id.* at 34.)

        Yet, when the state appellate court wrote its second decision affirming

Smith's judgment, it became the first to transmogrify petitioner's argument.

According to that court's restatement of the claim, "Defendant also argues the

prosecutor's delay in asserting the aiding and abetting theory until after the close

of evidence and waiting until his rebuttal argument to argue it constituted

prosecutorial misconduct." (Lodgment 10 at 9.)  Thus, the court misstated

petitioner's claim regarding the prosecutor's waiting for the close of evidence to

unveil its aiding-and-abetting theory.

That error carried no practical significance, however, because the state appellate court went on to address petitioner's lack-of-notice claim and to reject it. (Lodgment 10 at 11-14.)  Respondent, however, has not done so in this federal proceeding.  Despite copious quotations from the state appellate court's decision (see Answer Memo. at 2-5, 14-17, 21-24, 25-27), respondent, for whatever reason, has failed to quote the section of that decision rejecting petitioner's absence-of-notice claim and failed to offer any defense whatsoever to its glaring unreasonableness.

Petitioner has already established that unreasonableness.  The notion that the hearsay testimony of an investigator during the preliminary hearing, relating an interview he had conducted of a jailhouse informant, provided adequate notice to petitioner of the prosecution's aiding-and-abetting theory (Lodgment 10 at 11-13) is so far beyond a conclusion that fairminded jurists could reach in an objectively reasonable manner that it easily meets AEDPA's requirements, no matter how stringent they may be construed to be.  *Nothing* in the investigator's hearsay testimony provided such notice, and the state appellate court's merely saying that it did does not make it so.  Black does not become white, war does not become peace, in that manner.

"State decisions applying law to facts are governed by § 2254(d)(1);

however, factual findings underlying the state court's conclusion on the mixed

issue are accorded a presumption of correctness."  *Lambert v. Blodgett*, 393 F.3d

943, 976 (9th Cir. 2004).

> Consequently, a federal court reviewing a state court
>
> conclusion on a mixed issue involving questions both of
>
> fact and law must first separate the legal conclusions
>
> from the factual determinations that underlie it.
>
> Fact-finding underlying the state court's decision is
>
> accorded the full deference of §§ 2254(d)(2) and (e)(1),
>
> while the state court's conclusion as to the ultimate legal
>
> issue – or the application of federal law to the factual
>
> findings – is reviewed per § 2254(d)(1) in order to
>
> ascertain whether the decision is "contrary to, or
>
> involved an unreasonable application of, clearly
>
> established" Supreme Court precedent.  28 U.S.C. §
>
> 2254(d)(1).

*Id.* at 977-78.

The state appellate court's conclusion that petitioner received adequate

notice from the hearsay testimony at the preliminary hearing appears to be a pure

legal conclusion because it simply rested generally on the cold transcript, rather

than on specific factual findings.  Even if this is a mixed issue of law and fact, however, as the foregoing passage indicates, that conclusion would *still* not be awarded "the full deference of §§ 2254(d)(2) and (e)(1)," but would instead be assessed under § 2254(d)(1) standards.  Such assessment should ensure habeas relief for petitioner. The investigator's preliminary hearing testimony provided no notice at all, as defense counsel pointed out when aiding-and-abetting was first raised *in fact* following the close of the evidence (Lodgment 2 at 15 RT 2884-85) and, more tellingly, as conclusively established by the defense she put on at trial, which was aimed solely at the prosecution's direct-perpetrator theory, but completely irrelevant to, and thus not a defense to, the aiding-and-abetting theory.[7]

Equally unreasonable was the state appellate court's conclusion that petitioner had an adequate opportunity to refute the aiding-and-abetting liability theory because the trial court had made clear it would give that instruction prior to

---

[7]  In her closing argument, defense counsel *repeatedly* characterized petitioner's physical inability to have struck the blows that killed Minnie Smith as the "central" issue in the case.  (*See, e.g.*, Lodgment 2 at 16 RT 2990 ("Now, yesterday, you heard a closing argument.  Sounded pretty good except that it's full of diversions and holes, and it doesn't address the central question in this case, which is, how could Mr. Smith have killed Minnie Smith?  How could he have, when he wasn't capable of it?"); *id.* at 2997 ("That's the single most important fact in the case.  Could he have done it?  Is he physically capable of doing it?"); *id.* at 3006 ("We're back to the central issue of he couldn't physically have committed this crime.").)  Counsel obviously framed this as the central issue because it was a complete defense to the lone theory of which she had been given notice, namely, the prosecution's direct-perpetrator theory.

the defense closing argument.  (Lodgment 10 at 10.)  The bedrock constitutional principle of adequate notice, however, requires far more than that.  It *should* hardly bear stating that a defendant's right to present a defense includes the right to present *evidence* on his own behalf.  *See, e.g., Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (citing Sixth Amendment guarantee of right "to put before a jury evidence that might influence the determination of guilt"); *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defining fair trial as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues *defined in advance of the proceeding*") (emphasis added); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citations and internal quotation marks omitted).  The defense put on by petitioner was not complete because it was not a defense to the vicarious-liability theory.  As the prosecutor himself expressly pointed out in his closing argument, the jury could ignore petitioner's entire defense and still convict him under that theory. (Lodgment 2 at 16 RT 3111-13.)  And this state of affairs was created *through no fault of petitioner.*  His had been an eminently reasonable defense to the lone prosecution theory of which he had been given notice.

The notice given Smith of the new prosecution theory, on the morning that

closing arguments were to begin, is not constitutionally adequate notice because it came too late in the day to permit *evidence* to be adduced in defense to it.  That should hardly be a controversial point.  *Compare Gray v. Raines*, 662 F.2d 569, 575 (9th Cir. 1981) (reversing statutory rape conviction because of absence of notice and specifically holding that prosecutor's first referencing this offense at the instruction conference was insufficient) *with Calderon v. Prunty*, 59 F.3d 1005, 1009-10 (9th Cir. 1995) (finding adequate notice of prosecution theory given by its opening statement, its adduced evidence, and its restatement of that theory in argument on the defendant's motion for judgment of acquittal at conclusion of prosecution's case, all of which occurred before defense case); *Stephens v. Borg*,  59 F.3d 932, 936 (9th Cir. 1995) (finding adequate notice was given of state's felony-murder theory both prior to trial, as evidenced by defense counsel's addressing felony predicate in his opening statement, and at trial by evidence adduced in state's case-in-chief and by prosecutor's requesting instruction on that theory while petitioner was still putting on his case-in-chief); *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir. 1992) (finding defense given adequate notice of felony-murder theory well before instructional conference by introduction of prosecution evidence concerning defendant's intent to commit robbery);

The point is not merely an academic one in the instant case.  Defending

Case No.  CV 11-01076 ODW (MRW)
Traverse                                    23

solely against a direct-perpetrator theory, the defense introduced evidence supporting the conclusion that Samuel Matthews committed the charged offense. (6 CT 1467-1469; 9 RT 1845; 9 RT 1832-35; 6 CT 1467-68; 9 RT 1859-60) Had he been on notice that the state intended to use that evidence against him by claiming it supported an aiding and abetting theory, petitioner, through his own testimony or that of other witnesses, could have offered proof of the absence of any agreement between himself and Mathews to have the latter commit the charged murder.

As noted above, respondent repeatedly claims that none of this matters because, "[w]hile the prosecutor briefly referred to the aiding-and-abetting theory, he did not rely upon it in his argument . . . ."  (Answer Memo. at 18; *see also id.* at 20 ("[T]he prosecutor did not rely upon the [aiding-and-abetting] theory . . . .").) This repeats the view of the state appellate court.  (*See* Lodgment 10 at 10 (characterizing prosecutor's references to aiding and abetting in his rebuttal argument as "abbreviated" and "meager").  But: not only did the prosecutor *expressly* say he was relying on the aiding-and-abetting theory (Lodgment 2 at 16 RT 3034), this is what he told the jury:

> But the fact of the matter is – and this is just the law –
> the defendant killed his wife.  He wielded that fireplace
> tool himself.  But if you don't believe that – or let's say

three of you get back in the deliberations and say, I just

don't know.  I know he's involved.  I know he's lying

about the jewelry.  He's got the jewelry.  He's got duct

tape that matches duct tape from his crime scene.  I know

he's in on it, but I'm not sure that he could have wielded

that weapon.

Well, guess what?  You don't have to be.  And that's the

law.

Is it my theory?  Heck, no it's not my theory.  That's not

what I think happened.  But it's not something that stops

you from convicting him.  [Defense counsel] knew I was

going to address this.

Aiding and abetting means that – well, before I talk

about aiding and abetting and you can be guilty, you are

either the actual perpetrator, the guy who wielded the

murder weapon or you aided and abetted someone else in

committing the crime.

Aiding and abetting.  All that means – all that means is,

you aid or encourage or help in some way somebody else

commit the crime with the intent that they commit that

crime.  That's all that means.  And I'm – for the purpose of this case, I could care less which one you believe.  But the fact of the matter is, there is zero doubt that the defendant is involved in the murder of his wife and that he aided and abetted somebody or did it himself.  None.  Because there's no other explanation on the face of the planet that explains his lies, the possession of that jewelry wrapped in duct tape.

It's as simple as that.

And that's why I gave up on the 15 or 20 pages of notes I had on all the other stuff on the case, because it's that simple.

*You do not even need to be present.  We can talk about alibis and time of death and windows of opportunity and everything else until we're blue in the face.*

The prosecution theory: He killed her before he left the house and he went to work.  Does it matter if you buy that theory?  He doesn't even have to be the one who wielded the murder weapon.  He was.  And he did.

*And half of you can think it was one way and the other*

> *half think it's the other way, doesn't matter. That's still*
>
> *a guilty verdict.*

(Lodgment 2 at 16 RT 3111-13 (emphases added).)

In sum, in light of respondent's total silence regarding petitioner's claim of constitutionally inadequate notice, that claim stands unrebutted.

Petitioner has already set out the reasons why this Court should find the absence of notice to be structural error and not subject it to harmlessness analysis (Petition Memo. at 55-57); respondent offers no counter-argument. If this Court should, nonetheless, disagree, it should find the error prejudicial for all the reasons also given by petitioner (Petition Memo. at 57-65). Indeed, only today, the Ninth Circuit issued an opinion confirming that an error occurring in a prosecutor's rebuttal argument, as occurred here, is particularly prejudicial because it comes in the last words that jurors hear from an attorney. *United States v. Sanchez*, 10-50192, Slip Op. 19808, 19816 (November 1, 2011) citing *See United States v. Carter*, 236 F.3d 777, 788 (6th Cir. 2001) (finding it significant that "[t]he prosecutor's improper comments occurred during his rebuttal argument and therefore were the last words from an attorney that were heard by the jury before deliberations.") Through one route or the other, this Court should grant habeas relief based on the absence of notice. The egregious manner in which the state

surprised petitioner with its alternative theory of liability, and the objectively unreasonable manner in which the state appellate court approved it, amply warrant the requested relief.

## III.   THE TRIAL COURT'S INSTRUCTING ON A LEGALLY INADEQUATE THEORY PERMITTED THE JURY TO CONVICT PETITIONER OF MURDER WITHOUT FINDING ESSENTIAL ELEMENTS OF THAT OFFENSE, THEREBY VIOLATING HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL

A second element of petitioner's claim is that the trial court not only erred by giving its aiding-and-abetting instruction in the first place, but badly compounded that error when it included therein the "natural-and-probable consequences" theory of vicarious liability, which permitted the jury to convict him of murder if it found that he had aided and abetted another person to commit a *different* offense.  The instruction given permitted the jury to convict petitioner of murder without finding malice aforethought, premeditation, *or* deliberation on his part.  The instruction *also* erroneously injected the doctrine of withdrawal, which excused from criminal liability a defendant who had aided and abetted the initial stages of the commission of a crime, but who subsequently attempted to prevent

its completion.  This mistake could only serve to reinforce the wholly unsupported notion that petitioner was somehow involved with another person in the charged murder, which should never have been placed before the jury.  (*See* Petition Memo. at 65-87.)

Respondent replies with lengthy quotations from the state appellate court decision and little else.  He argues that all instructional errors were necessarily harmless because the aiding-and-abetting instruction itself, and its included "natural-and-probable consequences" theory and withdrawal doctrine, were entirely superfluous, factually unsupported, and irrelevant, so no reasonable juror would have been misled by the errors, and, in any event, the evidence of guilt was overwhelming.  That argument is wrong for all the reasons previously set out by petitioner, and, once again, does not even attempt to meet petitioner's contentions.  Among the points left completely unaddressed by respondent are the following:

1.   The prosecutor, the trial court, and the state appellate court all agreed that the evidence of Smith's guilt as a direct perpetrator was *not* overwhelming, and that a reasonable juror could have acquitted him on that theory.  That was precisely why the prosecutor requested the instruction in the first place, and as the Ninth Circuit has observed, "In the adversarial process, the prosecutor, more than neutral jurists, can better perceive the weakness of the state's case."  *Singh v. Prunty*, 142 F.3d 1157, 1163 (9th Cir. 1998).  The trial court expressly agreed with

the prosecutor.  (*See* Lodgment 2 at 15 RT 2885-86 (citing "considerable evidence" that supported "reasonable interpretation" that petitioner was not perpetrator); *see also id.* at 15 RT 2887 (noting that defense had presented  "*strong* case[] casting doubt on his ability to inflict the blows that caused her death") (emphasis added).)  Even the state appellate court, which is not known for its hesitancy in characterizing evidence of guilt as overwhelming to support a harmless-error finding, did not do so in this case.  It, instead, agreed with the prosecutor and the trial court.  (*See* Lodgment 10 at 9 (noting petitioner had presented "an arguably successful defense concerning his identity as the perpetrator of a crime").)  In light of that triad, respondent's contrary characterization of the evidence is unconvincing.

Lest the facts be muddied by respondent's slanted summary of the evidence (Answer Memo. at 18-19), which omits all mention of the substantial evidence that undercuts his "overwhelming" characterization, petitioner must restate the obvious.  There were no eyewitnesses, confessions, or incriminating tape recordings in this case.  Petitioner adduced credible evidence that he had not been home at the time the crime was committed and that, regardless, he was physically incapable of perpetrating the fatal assault because of his medical condition. Although DNA evidence linked to him was recovered from the crime scene, all of it was consistent with the facts that he lived in the residence and had been in bed

with his wife the night before her homicide.  No other forensics evidence inculpated him.  This was, in short, a close case.

2.  The state appellate court acted unreasonably when it retreated from its original conclusion that the evidence of the jury's focus during deliberations on the evidence of petitioner's physical inability to have carried out the fatal attack, as evinced by a jury note, helped establish the prejudice of the instructional error. (Petition Memo. at 61.)  This was the precise weakness in the state's case that the prosecutor and trial court had expressly singled out as requiring the aiding-and-abetting instruction in the first place.  (Lodgment 2 at 15 RT 2885-87.)

3.  The state appellate court acted unreasonably and contrary to federal law when it applied a test for ascertaining whether error has occurred in order to decide whether found error is harmless.  (Petition Memo. at 76-79.)

4.  The state appellate court acted unreasonably when it failed to apply the precept that jurors are not equipped to discern legal errors contained in instructions.  (Petition Memo. at 77-79.)

5.  The state appellate court acted unreasonably when it relied on certain other instructions to establish the harmlessness of the instructional errors at issue because the erroneous instructions effectively informed the jury that the trial court's other instructions defining the elements of first-degree murder do not apply to the circumstances covered by the erroneous instructions, and because the other

instructions included the admonition to follow all instructions.  (Petition Memo. at 79-81.)

6.  The state appellate court acted unreasonably when it relied on the prosecution's closing arguments as evidence of the harmlessness of the instructional errors because it ignored those portions of those arguments that likely misled a reasonable juror into applying the erroneous instructions and it failed to recognize the import of the prosecutor's not specifically arguing the erroneous legal concepts.  (Petition Memo. at 83-85.)

7.  The state appellate court acted unreasonably when it ignored or discounted all indicia of the prejudice caused by the erroneous instructions, including the facts that (a) petitioner was just as blind-sided by the trial court's permitting the jury to convict him of first-degree murder without finding the essential elements of that offense as he was by the trial court's permitting the jury to convict him on an aiding-and-abetting theory of which he had no notice; (b) the trial court necessarily confused the jury when it violated its duty not to instruct on irrelevant legal principles, and these principles relieved the jury from making findings on relevant issues; and (c) the likelihood that at least one juror would take the path of least resistance, which, in this case, would mean following the erroneous instructions that relieved him or her of the need to grapple with the essential elements of first-degree murder.  (Petition Memo. at 85-87.)

# CONCLUSION

For all the foregoing reasons, and all those set out in Smith's petition and supporting memorandum, this Court should (1) issue a writ of habeas corpus to have him brought before it to the end that he may be discharged from his unconstitutional confinement and restraint; (2) conduct an evidentiary hearing; and (3) grant such additional relief as may be appropriate and dispose of the matter as law and justice require.

Dated: November 2, 2011                     Respectfully submitted,

                                            RIORDAN & HORGAN

                                            /s/ Dennis P. Riordan
                                            _____

                                            By: Dennis P. Riordan

                                            Counsel for Petitioner
                                            MARVIN VERNIS SMITH

Case No.  CV 11-01076 ODW (MRW)
Traverse                                    33