KAMALA D. HARRIS
Attorney General of California
KEVIN VIENNA
Supervising Deputy Attorney General
ROBIN URBANSKI
Deputy Attorney General
State Bar No. 228485
110 West A Street, Suite 1100
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 645-2230
Fax: (619) 645-2271
E-mail: Robin.Urbanski@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **MARVIN VERNIS SMITH,** | SA CV 11-1076 ODW (MRW) |
| Petitioner, | **RESPONDENT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION** |
| **v.** | |
| **RAUL LOPEZ,WARDEN,** | |
| Respondent. | |
| | Judge Hon. Michael R. Wilner |

# TABLE OF AUTHORITIES

**Page**

**CASES**


*Brecht v. Abrahamson*
507 U.S. 619
113 S. Ct. 1710
123 L. Ed. 2d 353 (1993) ........................................ 11, 13, 14

*Carey v. Musladin*
549 U.S. 70
127 S. Ct. 649
166 L. Ed. 2d 482 (2006) ........................................ 4

*Cole v. Arkansas*
333 U.S. 196
68 S. Ct. 514
92 L. Ed. 644 (1968) ........................................ 3

*Estelle v. McGuire*
502 U.S. 62
112 S. Ct. 475
116 L. Ed. 2d 385 (1991) ........................................ 6

*Gautt v. Lewis*
489 F.3d 993 (9th Cir. 2007) ........................................ passim

*Harrington v. Richter*
562 U.S. ___
131 S. Ct. 770
178 L. Ed. 2d 624 (2011) ........................................ passim

*James v. Borg*
24 F.3d 20 (9th Cir. 1994) ........................................ 5

*Knowles v. Mirzayance*
__ U.S. __
129 S. Ct. 1411
173 L. Ed. 2d 251 (2009) ........................................ 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Lee v. Small*
419 Fed. Appx. 763
2011 WL 797332 (9th Cir. 2011) .......... 9

*Lockyer v. Andrade*
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003) .......... 1, 3

*Morrison v. Estelle*
981 F.2d 425 (9th Cir. 1992) .......... 6

*Murtishaw v. Woodford*
255 F.3d 926 (9th Cir. 2001) .......... 6

*People v. Diaz*
3 Cal. 4th 495 (1992) .......... 10

*Premo v. Moore*
__ U.S. __
131 S. Ct. 733
178 L. Ed. 2d 649 (2011) .......... 3

*Sessoms v. Runnels*
__F.3d__
2011 WL 2163970 (9th Cir. June 11, 2011) .......... 4

*Sheppard v. Rees*
909 F.2d 1234 (9th Cir. 1989) .......... 6, 10

*Teague v. Lane*
489 U.S. 288
109 S. Ct. 1060
103 L. Ed. 2d 334 (1989) .......... 1, 10

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000) .......... 1, 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Wright v. Van Patten*
552 U.S. 120
128 S. Ct. 743
169 L. Ed. 2d 583 (2008) (per curiam) .......... 4, 10

*Yarborough v. Alvarado*
541 U.S. 652
124 S. Ct. 2140
158 L. Ed. 2d 938 (2004) .......... 3

**STATUTES**

28 United States Codes
§ 2254 .......... 1

California Penal Code
§ 187(a) .......... 5
§ 12022.53 (b) .......... 9
§ 12022.53 (d) .......... 9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Sixth Amendment .......... 3, 4, 5, 10

Respondent, Raul Lopez, Warden of California State Prison, Corcoran, by and through counsel, Kamala D. Harris, Attorney General for the State of California, and Robin Urbanski, Deputy Attorney General, hereby objects to the Report and Recommendation of United States Magistrate Judge (hereinafter "Report"), filed on February 28, 2012. The Report concludes that Petitioner Marvin Smith should receive habeas relief from his conviction for the brutal murder of his wife because he lacked notice that the prosecution would proceed on an aiding-and-abetting theory. Respondent respectfully objects to the Report as it fails to identify any clearly established authority as set forth by the United States Supreme Court requiring that a prosecutor notify a criminal defendant of his particular theory of murder, even more specifically a vicarious liability theory of murder, as a matter of constitutional law. Further, because the rule advanced in the Report is a new rule of criminal procedure not compelled by the Constitution or the United States Supreme Court, its application in this case is barred by *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). Additionally, the Report severely understates the compelling evidence pointing to Smith as his wife's murderer, rendering any error harmless. This Court should sustain these objections, reject the Report's recommendation, and deny Smith habeas relief.

At the outset, by its terms, 28 U.S.C. § 2254 bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2). *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011). Those exceptions require showing the state court's decision "was contrary to" federal law that is clearly established in the holdings of the Supreme Court (§ 2254(d)(1)); or that it "involved an unreasonable application of" such law (§ 2254(d)(1)); or that it "was based on an unreasonable determination of the facts" in light of the evidentiary record before the state court (§ 2254(d)(2)). *Id*. at 785; *Lockyer v. Andrade*, 538 U.S. 63, 70-71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d

389 (2000). Although § 2254 (d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings," it allows such relitigation only where a petitioner can show that the state court's ruling on the claim being presented in federal court was so lacking in justification that that there was an error obvious and indisputable "beyond any possibility for fairminded disagreement." *Richter,* 562 U.S. at 786-87.

In his Petition, Smith argued that the trial court improperly instructed the jury on aiding and abetting liability — a theory he claims was introduced by the prosecution after the close of evidence such that he had no notice of the theory and its introduction violated his right to due process. The state court rejected this argument noting that Smith had the requisite notice by virtue of the accusatory pleading which charged him with murder, and secondarily based upon evidence presented at the preliminary hearing. (Lodgment 11-14.) During the preliminary hearing, a police detective testified to information received from a jailhouse informant that Smith had confessed to the informant his plans to murder his wife, and his having left the house the day of the murder and staging it to look like a robbery scene. The informant's statement further suggested that Smith may not personally have committed the murder, however. He relayed that Smith told him he left the house unlocked and disarmed the alarm, suggesting that another person later entered the house and killed Smith's wife. (Report at 4.) Due to a concern about whether the informant would ultimately refuse to testify at trial, the trial court ordered the parties not to discuss him or the substance of his proffered testimony during opening statements. (Report at 5-6.) Ultimately, at the end of his case-in-chief, the prosecutor informed the defense and the court that he decided not to call the informant in his case-in-chief, but might reassess that decision if Smith decided to testify. As Smith did not testify in his own defense, the informant was never called as a witness at trial. (Report at 6.)

///

The United States Supreme Court precedent controlling Smith's claim is as follows: "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1968). The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense." *Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir. 2007). The Ninth Circuit has observed that the Supreme Court has "written relatively sparingly" on a criminal defendant's right to notice beyond its decision in *Cole. Gautt*, 489 F.3d at 1004, n.11. The rule in *Cole* — that a defendant has the right to be informed of the charges against him such that he can prepare a defense — is a general rule. The reasonableness of the application of a clearly established rule "can depend in part on the nature of the relevant rule." *Yarborough v. Alvarado*, 541 U.S. 652, 663-64, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). Where "rules are more general, and their meaning must emerge in application over the course of time. . . . the more leeway [state] courts have in reaching outcomes in case by case determinations." *Id.*

"[C]learly established … as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." *Andrade*, 538 U.S. at 71; *Williams*, 529 U.S. at 412. Under this stringent standard, a "specific" legal rule may not be inferred from Supreme Court precedent; rather, the Supreme Court case itself must have "squarely" established that specific legal rule. *Richter*, 131 S. Ct. at 786; *Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the petitioner's claim falls. *Premo v. Moore*, __ U.S. __, 131 S.

Ct. 733, 743, 178 L. Ed. 2d 649 (2011); *Carey v. Musladin*, 549 U.S. 70, 75-76, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) (Supreme Court's application of legal rule to government practices does not clearly establish rule applies to private conduct). The Supreme Court has "made clear that the absence of controlling Supreme Court precedent effectively insulates a state court decision from federal review under AEDPA, *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (per curiam) ('Because our cases give no clear answer to the question presented, let alone one in[the accused's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.')" *Sessoms v. Runnels*, __F.3d__, 2011 WL 2163970 at *16, n. 6 (9th Cir. June 11, 2011). "Simply put, one cannot demonstrate that a decision is "contrary to, or an unreasonable application of," precedent that does not yet exist." *Sessoms v. Runnels*, 2011 WL 2163970 at *6.

In the absence of any controlling authority from the United States Supreme Court holding that a prosecutor is constitutionally required to notify a criminal defendant that he intends to proceed on particular theory of a crime charged in an information it cannot be said that the state court's rejection of Smith's claim was an error so obvious and indisputable, that it cannot even be the subject of fairminded disagreement. *Richter*, 131 S. Ct. at p. 786. The Report's conclusion finding the state court's rejection of this claim unreasonable fails to consider the lack of clearly established Supreme Court authority on the subject, fails to give deference to the state court's application of its own laws, and fails to give the state court the leeway required in applying a general constitutional rule. The Report attempts to extend a general principle to a new set of facts without ever identifying any specific legal rule as articulated by the United States Supreme Court that the state court unreasonably applied.

As the Ninth Circuit has recognized, "[A] charging document, such as an information, is the means by which [Sixth Amendment] notice is provided." *Gautt,*

489 F.3d at 1004; *see also James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994) ("To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information.") To satisfy the Sixth Amendment, "an information [must] state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against." *Gautt*, 489 F.3d at 1003 (citation omitted); *James*, 24 F.3d at 25 ("An information is not constitutionally defective if it states the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against.") (internal quotation marks and citations omitted).

Here, the information notified Smith that "On or about December 15, 2005, in violation of Section 187(a) of the Penal Code (MURDER), a FELONY, MARVIN VERNIS SMITH did unlawfully and with malice aforethought kill MINNIE SMITH, a human being." (1 CT 103; Report at 18.) The charging document thus informed Smith of the specific crime, its elements, the victim, and the date on which it occurred. No more was constitutionally required. And the Magistrate agreed in the Report: "Beginning with first principles, the Court agrees that Petitioner was adequately informed about the murder charge and the possibility of an aiding-and-abetting argument before the trial began." (Report at 18.) The Report at page 18 went on to accurately note the state of the law in California:

> California Penal Code Section 31 states that a person who aids and abets the commission of a crime may be punished as a principal for the crime. Such vicarious liability is implicit in the charging document and need not be pled with specificity before trial under state law. People v. Diaz, 3 Cal. 4th 495, 557 (1992); see also Carothers v. Rhay, 594 F.2d 225, 229 (9th Cir. 1979) (pleading that charges defendant as principal gives "adequate notice" of aiding-and-abetting charge). As a result, the Court concludes that Petitioner had adequate notice before the commencement of trial that he was charged with first degree murder —

and that the prosecution could properly have pursued an aiding-and-abetting theory of liability against Petitioner for that murder at trial. See Givens, 786 F.2d at 1380.

As it was a matter of settled law in California, that vicarious liability need not be plead with specificity, a federal habeas court is not at liberty to disturb it. *Estelle v. McGuire,* 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). This should have been the demise of Smith's claim regarding lack of notice.

Rather than deciding the notice issue on the adequacy of the information alone, the Report erroneously goes on to analyze the adequacy of the evidence presented at the preliminary hearing with regard to an aiding-and-abetting theory and the trial court's ruling about that evidence. Again, there is no United States Supreme Court precedent requiring the prosecution to present evidence at a preliminary hearing of the specific theory on which it intends to proceed at trial. Where there is some debate about the adequacy of the language in the charging document, however, courts have looked elsewhere to determine whether the defendant received adequate notice of the charges against him, including the testimony at a preliminary hearing, *Sheppard v. Rees*, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989), or even the testimony of witnesses at trial, *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir. 1992) (adequate notice of felony-murder theory by virtue of prosecutor's request for jury instruction two days before closing argument based on evidence presented at trial); *Murtishaw v. Woodford*, 255 F.3d 926, 954 (9th Cir. 2001) (adequate notice of felony-murder theory from opening statement, evidence, and instruction conference). (Report at 15 (*but see Gautt*, 489 F.3d at 1004 n.11, 1009) (noting that Supreme Court has never "shed additional light on what sources may be used to determine whether a defendant has, in fact, been given adequate notice").) And, even where the prosecution requests a jury instruction at the close of evidence to conform to evidence introduced during the course of the trial, there is no due process violation so long as the defense has sufficient time to prepare for

closing argument with the new theory in mind. (Report at 15 (citing *Stephens v. Borg*, 59 F.3d 932, 935 (9th Cir. 1995)).) Here, there was no debate about the adequacy of the language in the information as acknowledged in the Report, and thus the inquiry should have ended.

The Report makes much of what transpired at the preliminary hearing and following to support its ultimate conclusion that Smith lacked notice that he could be prosecuted for aiding and abetting the brutal murder of his wife, or that the notice he had once been provided was somehow revoked. Interestingly, the Report initially notes "during pretrial proceedings, the defense was informed of evidence that potentially could have supported such vicarious liability," namely the preliminary hearing testimony regarding the informant. (Report at 18.) "The Court accept[ed] that the preliminary hearing testimony provided further notice to Petitioner that he might face an aiding-and-abetting liability argument at trial." (Report at 19, citing *Morrison*, 981 F.2d at 428.)

As the state court noted with regard to the preliminary hearing, "[e]ven if this case required greater specificity concerning the basis of [Smith's] liability," and there is no controlling United States Supreme Court authority requiring any greater specificity than the information charging Smith with first degree murder, "the evidence presented at [Smith's] preliminary examination provided it." (Lodgment 10 at 11.) Regardless of whether the prosecution ultimately called the informant to testify, the substance of the testimony at the preliminary hearing was that Smith had a motive to kill his wife, participated in planning her murder, participated in staging the house to make it appear as though she had been a victim of a home invasion robbery, and suggested the possibility that Smith may not have personally committed the murder. Thus, even if there was a need to notify Smith of the possibility of aider and abettor liability being introduced at the trial beyond the information, the preliminary hearing evidence certainly apprised him of that possibility.

Curiously, despite having found sufficient notice in the form of the charging document *and* in the preliminary hearing testimony, the Report goes on to frame the issue before the Court as "whether Petitioner had adequate notice that he could be prosecuted for aiding and abetting the murder of his wife <u>after his trial began</u>." (Report at 20, emphasis in original.) The Report suggests that the trial court's preclusion of mention by either party of the informant during opening statements was tantamount to an order that "affirmatively barred the prosecution from pursuing a key aspect of its case." (Report at 21.) Additionally, the Report suggests that the import of the trial court's ruling regarding opening statements "was that the prosecution's aiding-and-abetting theory – which, according to the Second Appellate Decision, was supported only by the informant's potential testimony – was firmly taken off the table." (Report at 21.) The Report finds the state court's determination of the facts unreasonable for failing to analyze the trial court's order with regard to opening statements. (Report at 25.) It is the Report that unreasonably determined the facts, however. The trial court never precluded the prosecutor from calling the informant as a witness. The trial court never precluded the prosecutor from advancing an aiding-and-abetting theory at trial with witnesses other than the informant. In fact, the prosecutor never stated that he absolutely would not call the informant as a witness or present an aiding-and-abetting theory at trial; he specifically reserved making any such decision unless and until Smith testified. Finally, given the defense in the case, that Smith was physically incapable of wielding a fireplace tool to such a degree as to be able to inflict the fatal injuries to his wife, it certainly could not have taken the defense by surprise that the prosecution might seek to present additional evidence or argument, especially in light of the informant's proffered testimony, that even if Smith was not the direct

///

///

///

perpetrator of his wife's murder, he nonetheless planned, and aided and abetted another, in the commission of the offense.[1]

The Report relies heavily on the Ninth Circuit's decision in *Gautt*, 489 F.3d 998 (9th Cir. 2007), but that case is entirely distinguishable from the case at hand. *Gautt* involved a defendant charged in the information with a sentencing enhancement under a particular statute (Cal. Penal Code, § 12022.53 (b) (*personally* using a firearm), but had his sentence enhanced following trial under a completely separate statute (Cal. Penal Code, §12022.53 (d) (*intentionally* discharging a firearm causing great bodily injury or death) that was not charged in the information. The Ninth Circuit concluded that the petitioner's due process right to notice had been violated by his being sentenced to a 25-year-to-life enhancement with which he was never charged, as opposed to the 10-year enhancement with which he was charged, and that the state court's conclusion to the contrary was an unreasonable application of United States Supreme Court precedent. *Gautt*, 489 F.3d at 998. The problem in *Gautt* was one of confusion where the trial court mistakenly instructed the jury as to the elements of the wrong enhancement and mistakenly provided the jury with a verdict form referring to the incorrect code section as well. No evidence at trial or argument by the prosecutor supported that enhancement; the evidence and argument only supported the enhancement with which the petitioner was originally charged. *Id*. at 998-1001.

First, the Report's reliance on *Gautt* and other Ninth Circuit authority[2] to

[1] Respondent acknowledges that the state court rejected this argument with regard to whether sufficient evidence supported the giving of an aiding-and-abetting instruction. But the question of whether Smith had *notice* of this theory is a separate issue. The evidence that Smith himself presented, that he was physically incapable of committing such a violent crime, shows that he could reasonably expect the prosecution to present evidence that even if not the direct perpetrator, he participated in the murder.

[2] The Report also relies on *Lee v. Small*, 419 Fed. Appx. 763, 2011 WL 797332 (9th Cir. 2011), a decision similar to *Gautt* in which the Ninth Circuit granted relief on grounds that the state court unreasonably found the defendant was on notice of a gang enhancement allegation where the prosecutor elected a

(continued…)

support its conclusion demonstrates that the conclusion is incorrect — these are not controlling cases from the United States Supreme Court that can serve as a basis to undo a state court conviction. *See Wright v. Van Patten*, 552 U.S. at 126. Moreover, in *Gautt*, the petitioner was convicted of a crime with which he was not charged, and sentenced to a much greater term than had he been convicted of the charged crime. *Gautt*, 489 F.3d at 1008. Not so here. Respondent does not dispute that a criminal defendant has a Sixth Amendment right to notice of the specific *charges* against him. Aiding and abetting a murder is not a *specific charge* — it is a theory of murder. There is no controlling United States Supreme Court authority holding that a criminal defendant has a right to notice of all theories the prosecution intends to present at trial. Accordingly, a rule requiring the prosecutor to provide such notice would be a new rule of criminal procedure barred by *Teague.*

Furthermore, under California law, vicarious liability is implied when a defendant is charged with murder; it need not be pled with specificity. *People v. Diaz*, 3 Cal.4th at 557. Smith was charged with first degree murder and convicted of first degree murder. The state court correctly noted that the information and preliminary hearing testimony adequately informed Smith of his potential to be prosecuted as an aider and abettor to his wife's murder. The court further observed that the prosecutor's request for the vicarious liability jury instruction occurred during the jury instruction conference, and not just prior to closing arguments. (Lodgment 10 at 13 (*comparing Sheppard v. Rees,* 909 F.2d at 1236 (due process violation where prosecutor asked for felony murder instruction after jury instruction conference, just prior to closing argument).) Finally, the state court correctly noted that aiding and abetting was not the prosecutor's primary theory of the case — it was a fall back position that the prosecutor mentioned briefly in rebuttal argument.

---

(…continued)
particular code section for the enhancement charged in the information, but the petitioner's sentence was ultimately enhanced by a separate code section.

(Lodgment 10 at 13.) The state court correctly determined that Smith had the notice to which he was entitled under the Constitution. Even if this determination could be debatable, it cannot be said that it was unreasonable beyond any possibility for fairminded disagreement. *Richter,* 562 U.S. at 786-87.

Finally, the Report erroneously concludes that any due process error was prejudicial, requiring reversal. (Report at 26-28.) The Report mischaracterizes the showing to be made, noting that "[t]his was a closely-fought trial with dueling experts, conflicting percipient witnesses, and fierce disagreement over the basic facts of the case." This would seem to characterize many, if not most, first-degree homicide trials. The Report notes the absence of "'home-run' evidence — a confession, an eyewitness, a piece of indisputable forensic evidence — that conclusively linked Petitioner to the crime." If "home-run" evidence were required to show an error was harmless, it would seem that the vast majority of constitutional errors would require reversal. That is not the standard. Even where a constitutional violation has occurred, a federal habeas court may not grant relief under § 2254(d) unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 629-30, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *see also Gautt*, 489 F.3d at 1015-16 (assuming, without deciding, that harmless error applies to notice violation, observing that Supreme Court has never included a notice violation of the "limited roster" of structural errors).

Preliminarily, while the Report points to Smith's suggestion that had he been notified of the aiding and abetting theory, he might have presented evidence of the lack of an agreement between him and anyone else to murder his wife (Report at 26), the Report fails to consider that while Smith objected at trial on the basis that there was no evidence to warrant vicarious liability instructions, he never requested to reopen evidence so as to a present a defense to the theory. (15 RT 2883-2885.) It is unclear what evidence Smith could have presented to show the lack of an

agreement, and he has never suggested a witness he would have presented to do so. While Smith could have taken the witness stand in his own defense, his doing so would have subjected him to vigorous cross-examination as well as the possibility the prosecutor would have called the informant in rebuttal. In any event, if Smith felt he did not have an adequate opportunity to combat the theory, he could have moved to reopen his case, affording him the opportunity to present evidence refuting it. Alternatively, if he felt he had not been provided adequate time to prepare a response to the theory, he could have requested a brief continuance prior to arguing the matter. Smith had the opportunity, which defense counsel seized, to argue to the jury that the theory was not supported by the evidence. Defense counsel argued:

> What is going to happen next is, we are going to have a new theory in this case, for the first time ever, here today. I predict you're going to hear the prosecution say there had to be a second person involved. The reason I say that is because we proved [Smith] couldn't have done it.
>
> Now, all throughout this trial you've heard [the prosecutor] arguing how [Smith] could have done it and illustrating and demonstrating and whatnot. And the only person who comes up with the phantom second person is one Sam Matthews. Okay.
>
> But you watch. Now, that we've proven he couldn't have done it, proven there wasn't the time, there's going to be a phantom second guy. And [Smith] is going to be with that phantom second guy. And that second guy is going to be doing the killing and the lifting and whatnot, even though the prosecution's DNA experts say there's no foreign DNA found in the house.

(16 RT 3055.)

By requesting the instruction before argument, the prosecutor provided Smith the opportunity to prepare and respond to this theory of the case. Because Smith

had options available to him at the time the court approved the aiding-and-abetting instruction, Smith received constitutionally adequate notice of the theory. Smith had sufficient time to confront the facts that allegedly supported the theory, thereby eliminating the possibility that any lack of notice substantially and injuriously affected the jury's verdict. *See Brecht,* 507 U.S. at 629-30.

Moreover, the Report fails to consider the prosecutor's actual theory of the case — that Smith alone murdered his wife – and the overwhelming evidence that supported that theory. (16 RT 3111.) The crime scene was an atypical crime scene for a home invasion. Although a vase had been knocked over below the kitchen window as though the "burglar" had entered through that window, there was no shoe print in the planter below the window on the outside of the house and no dirt on the window sill or interior floor. (3 RT 669; 5 RT 1019-1020.) The only property stolen from the home was taken from a floor safe concealed in the master bedroom closet and hidden beneath the carpet — a safe that Smith himself admitted no one would suspect was there unless he knew about it. (5 CT 1307-1308; 10 RT 1885-1886, 1902-1903.) Moreover, the "burglar" had not ransacked the closet or the house in general to look for valuables (5 RT 1021-1022 ); strangely, the laundry room had been ransacked (10 RT 1885, 1890). A loaded gun (5 RT 799-800), and the victim's purse (5 RT 1050), were not taken. The murder weapon (the fireplace tool), the wire hanger binding the victim's wrists, and the duct tape found near her body, were all household items and not items an intruder would have brought into the home. (3 RT 676-677, 680; 4 RT 848-850, 916-917.) The burn injuries on the victim's body and the lack of injury to her wrists where she was bound signified that the injuries occurred at, or after, the time of her death (4 RT 908-910); it would be highly unusual for a true home invader to remain at the crime scene long enough to do such things to the victim's body. When Smith walked through the crime scene with a detective, he volunteered that jewelry and $30,000 should have been in the floor safe. (5 RT 1052-1054.) The "stolen" jewelry was found in the trunk of

his car as was a roll of duct tape. (5 RT 1058-1062; 6 RT 1209.) Smith had cavorted with other women, and even established joint bank accounts with another woman, for years prior to his wife's murder. (7 RT 1395-1398, 1407-1420; 8 RT 1472-1473, 1475-1476, 1652-1653.) Additionally, Smith said that "the only way to get out of the marriage they had to die," and that he was "not going to give Smith half of what [he] got so another man can live off it." (9 RT 1804.) Smith's DNA, and no other suspect's DNA, was found in the master bedroom, on the duct tape near the victim's body, on the duct tape around the jewelry box, and on the fireplace tool. (8 RT 1583-1587-1589, 1596-1597, 1599, 1614-1615.) Although the jury heard that Smith was still recovering from shoulder surgery, the jury also heard that he was healing very well and his range of motion was better than would generally be expected. (14 RT 2723-2725.) Additionally, there was no reason why Smith could not use his good arm, or even both arms, to wield the fireplace tool and murder his wife. (14 RT 2823.) Out of an abundance of caution, however, the prosecutor stated that if the jury did not believe that theory and did not believe that Smith wielded the murder weapon himself, then it alternatively could rely on the aiding-and-abetting theory to convict. (16 RT 3111-3113.) The prosecutor devoted the vast majority of his opening and closing arguments to explaining how the evidence demonstrated Smith alone was the murderer.

Given the compelling evidence that Smith killed his wife, evidence which the Report fails to mention, given that the defense had the opportunity to argue against the aiding-and-abetting theory in closing, and given the prosecutor's fleeting mention of the theory in closing as a fallback position, there is no basis from which to conclude any purported failure to inform Smith of the theory "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 629-30.

Consistent with controlling United State Supreme Court precedent, the state appellate court found no constitutional violation in this case. The court properly

considered the charging document primarily, and the evidence presented at the preliminary hearing secondarily, and determined that Smith was fairly advised of and afforded the opportunity to defend against the murder charge, which encompassed the potential for vicarious liability. Accordingly, Respondent objects to the Report's conclusions primarily because there is no controlling United States Supreme Court precedent requiring a prosecutor notify a criminal defendant of the particular theory of the case he intends to pursue at trial. As it cannot be said that the state court's rejection of Smith's claim was the result of error so clear and obvious that fairminded jurists could not even disagree about it, habeas relief may not be granted. *Richter,* 562 U.S. at 786-87. Accordingly, Respondent respectfully requests this Court reject the recommendation in the Report and deny Smith habeas relief.

Dated: March 11, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
KEVIN VIENNA
Supervising Deputy Attorney General

/S/ Robin Urbanski

ROBIN URBANSKI
Deputy Attorney General
*Attorneys for Respondent*

SD2011701683
80621814.doc

## CERTIFICATE OF SERVICE

Case Name: **Smith v. Lopez** No. **SA CV 11-1076 ODW (MRW)**

I hereby certify that on March 12, 2012, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**RESPONDENT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 12, 2012, at Sacramento, California.

| J. Yost | /S/ J. Yost |
|---|---|
| Declarant | Signature |

31421118.doc