DENNIS P. RIORDAN (SBN 69320)
E-mail: dennis@riordan-horgan.com
DONALD M. HORGAN (SBN 121547)
GARY K. DUBCOFF (SBN 168089)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA  94102
Telephone: (415) 431-3472
Fax: (415) 552-2703

Counsel for Petitioner
MARVIN VERNIS SMITH

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| MARVIN VERNIS SMITH, | Case No. SA CV 11-01076 ODW (MRW) |
| Petitioner, | **PETITIONER'S RESPONSE TO RESPONDENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| v. | |
| RAUL LOPEZ, Acting Warden, | |
| Respondent. | |

# TABLE OF CONTENTS

I.   THE ABSENCE OF ADEQUATE NOTICE OF THE
     PROSECUTION'S ALTERNATIVE THEORY OF
     LIABILITY VIOLATED PETITIONER'S DUE PROCESS
     RIGHTS.................................................... 2

     A.   This Court Should Refuse to Consider Arguments
          of Respondent Not Presented to the Magistrate  ................ 2

     B.   Respondent's Complaint Regarding the Absence of
          Clearly Established Federal Law Is Misplaced. .................. 3

     C.   Respondent's *Teague* Defense Fails............................ 8

     D.   The Constitutional Violation Prejudiced Petitioner............... 9

          1.   The Absence of Overwhelming Evidence of Guilt
               Is Apparent in the Record, as the Prosecutor, the
               Trial Court, the State Appellate Court, and the
               Magistrate All Agree. .................................. 10

          2.   The Relative Brevity of the Prosecutor's Reliance
               in Closing Argument on His Vicarious-Liability
               Theory Does Not Render the Constitutional
               Violation Harmless Under the *Brecht* Standard............ 12

          3.   That the Prosecutor Secured the Instruction on Its
               New Theory Prior to Closing Arguments Does Not
               Vitiate the Prejudice Suffered by Petitioner ............... 14

CONCLUSION..................................................... 16

-i-

# TABLE OF AUTHORITIES

## CASES

*Baldwin v. Hale,*
1 Wall. 223, 17 L.Ed. 531 (1864) .......................................................... 8

*Boardman v. Estelle,*
957 F.2d 1523 (9th Cir. 1992) .............................................................. 9

*Bradley v. Duncan,*
315 F.3d 1091 (9th Cir. 2002) .............................................................. 5

*Butler v. Curry,*
528 F.3d 624 (9th Cir. 2008) ................................................................ 8

*Cole v. Arkansas,*
333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ............................ 3, 4

*Fisher v. Roe,*
263 F.3d 906 (9th Cir. 2001) .............................................................. 5, 6

*Gautt v. Lewis,*
489 F.3d 993 (9th Cir. 2007) .............................................................. 4, 7

*Gonzalez-Servin v. Ford Motor Co.,*
662 F.3d 931 (7th Cir. 2011) ................................................................ 2

*Gray v. Raines,* 662 F.2d 569 (9th Cir. 1981) ...................................... 15

*Greenhow v. Secretary of Health & Human Servs.,*
863 F.2d 633 (9th Cir. 1988) ................................................................ 3

*Harrington v. Richter,*
562 U.S. __, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ........................ 1

*Holmes v. South Carolina,*
547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) ............... 10, 11

*Jackson v. Virginia,*
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ........................ 4

*Lockyer v. Andrade,*
538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) ...................... 5

*In re Oliver,*
333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) .............................. 4

*Panetti v. Quarterman,*
551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) .................... 5

*Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,*
840 F.2d 985 (1st Cir. 1988) ................................................................ 2

*In re Robert G.,*
31 Cal.3d 437, 182 Cal.Rptr. 644 (1982)                          15

*Roberts v. Apfel,*
222 F.3d 466 (8th Cir. 2000)                                      3

*Singh v. Prunty,*
142 F.3d 1157 (9th Cir. 1998)                                    11

*Strickland v. Washington,*
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)              4

*Teague v. Lane,*
489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)           1, 8

*United States v. Hardesty,*
977 F.2d 1347 (9th Cir.1992)                                     3

*United States v. Holmes,*
413 F.3d 770 (8th Cir. 2005)                                    14

*United States v. Howell,*
231 F.3d 615 (9th Cir. 2000)                              2, 3, 9, 10

*United States v. Kojayan,*
8 F.3d 1315 (9th Cir. 1993)                                     14

*United States v. Sanchez,*
659 F.3d 1252 (9th Cir. 2011)                                   14

*Williams v. Taylor,*
529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)            5

**STATUTES**

28 U.S.C. § 2254(d)(1)                                        1, 4, 5

Fed. R. Civ. P. 72(b)(2)                                         1

1    Petitioner Marvin Vernis Smith (hereinafter "Smith" or "petitioner"),

2  pursuant to Fed. R. Civ. P. 72(b)(2), hereby files his response to respondent's

3  Objections (doc. 17) to the Magistrate Judge's Report and Recommendation (doc.

4  15-1; hereinafter "R&R").  Respondent presents no reason for the Magistrate

5  Judge to issue a revised or supplemental report under L.R. 72-3.5, nor any basis

6  for this Court to reject or modify the R&R.

7    Respondent advances three arguments: (1) the Magistrate erred in

8  recommending the grant of habeas relief because there is no clearly established

9  federal law within the meaning of 28 U.S.C. § 2254(d)(1) unreasonably applied by

10  the state appellate court: specifically, no Supreme Court case has held that a

11  defendant is entitled to more particularized notice than that provided by a charging

12  document that adequately charges an offense; (2) contrary to *Teague v. Lane*, 489

13  U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Magistrate relied on a new

14  rule of criminal procedure–namely, that a defendant is entitled to notice of all

15  theories that the prosecution intends to pursue at trial; and (3) the Magistrate failed

16  to discern that the evidence against petitioner was so overwhelming that any

17  putative error must necessarily be harmless.  Petitioner will respond to these

18  arguments *seriatim*.

19    Before advancing his arguments, however, respondent begins by cherry-

20  picking the language he most likes from *Harrington v. Richter*, 562 U.S. __, 131

21  S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), reminding this Court how deferential are

22  the standards of review under AEDPA.  (Objections at 1-2).  Petitioner's Traverse

23  has already addressed the standards.  (*See* Petitioner's Traverse, doc. 14, at 8-12.)

24  As noted there, *Harrington affirmed* that "[t]he writ of habeas corpus stands as a

25  safeguard against imprisonment of those held in violation of the law.  [Federal]

26  Judges must be vigilant and independent in reviewing petitions for the writ...."

27  131 S.Ct. at 786.  *Harrington* created no new standard of review.  The applicable

28  standards are deferential, they are not insuperable.  The Magistrate's recitation of

1  the applicable standards (R&R at 12-13) is entirely accurate; his application of

2  those standards to the facts of this case is entirely consistent with them; and his

3  recommendation is mandated by fundamental constitutional principles.

4  **I.     THE ABSENCE OF ADEQUATE NOTICE OF THE**

5  **PROSECUTION'S ALTERNATIVE THEORY OF LIABILITY**

6  **VIOLATED PETITIONER'S DUE PROCESS RIGHTS**

7  **A.     This Court Should Refuse to Consider Arguments of**

8  **Respondent Not Presented to the Magistrate**

9  As an initial matter, and as the Magistrate has pointed out (R&R at 14 n.2,

10 citing *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000)), this Court would be

11 acting well within its discretion to not consider respondent's arguments with

12 respect to petitioner's inadequate-notice claim because respondent failed to make

13 them in a timely manner.  As petitioner pointed out in his Traverse (doc. 14 at 15-

14 19), although the inadequate-notice claim dominated his Petition (doc. 1) and

15 supporting Memorandum (doc. 7), respondent chose to ignore it, both in his

16 Answer (doc. 9) and Answer Memorandum (doc. 9-1).  The Magistrate, after

17 noting that respondent "did not directly address Petitioner's argument," pointed

18 out that "Respondent's brief does not contain the word 'notice' at all, which is

19 fundamental to Petitioner's contention on habeas."  (R&R at 14 n.2.)

20 Respondent's chosen approach to this litigation — putting his head in the

21 sand like an ostrich when confronted with petitioner's primary claim,[1] in the hope

22 that the Magistrate would do the same — is not one this Court must condone and

23 forgive.  The case law makes this abundantly clear.  *See, e.g., Howell*, 231 F.3d at

24 621, citing with approval *Paterson–Leitch Co., Inc. v. Massachusetts Mun.*

25 *Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("We hold categorically

---

26

27 [1] "The ostrich is a noble animal, but not a proper model for an appellate
advocate." *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir.

28 2011).

1  that an unsuccessful party is not entitled as of right to de novo review by the judge

2  of an argument never seasonably raised before the magistrate."); *see also*

3  *Greenhow v. Secretary of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir.

4  1988) (noting that Magistrates Act was not "intended to give litigants an

5  opportunity to run one version of their case past the magistrate, then another past

6  the district court."), *overruled in part on other grounds, United States v. Hardesty,*

7  977 F.2d 1347, 1348 (9th Cir.1992) (*en banc*) (*per curiam*); *Roberts v. Apfel*, 222

8  F.3d 466, 470 (8th Cir. 2000) ("We have stated that the purpose of referring cases

9  to a magistrate for recommended disposition would be contravened if parties were

10  allowed to present only selected issues to the magistrate, reserving their full

11  panoply of contentions for the trial court.") (citation and internal quotation marks

12  omitted).

13       Should this Court choose to exercise its discretion to refuse to consider

14  respondent's tardily raised defenses to petitioner's fair-notice claim, the lone

15  obligation imposed by the Ninth Circuit is that it make clear that it is "actually

16  exercis[ing] its discretion" to do so.  *Howell,* 231 F.3d at 622.

17      **B.**    **Respondent's Complaint Regarding the Absence of Clearly**

18          **Established Federal Law Is Misplaced**

19       Respondent faults the Magistrate for failing to "identify any clearly

20  established authority as set forth by the United States Supreme Court requiring

21  that a prosecutor notify a criminal defendant of his particular theory of murder"

22  (Objections at 1), which, according to respondent, is dispositive.  By his lights,

23  because the charging document adequately charged murder and did not have to

24  additionally specify that an aiding-and-abetting theory would be pursued by the

25  state, the Magistrate's "inquiry should have ended."  (*Id.* at 6-7.)

26       Respondent's argument is wrong on both the law and facts.  One of the

27  leading Supreme Court cases regarding constitutionally adequate notice, *Cole v.*

28  *Arkansas*, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), reversed defendants'

1   convictions not because of any inadequacy in the charging document, but because
2   their convictions had been upheld on a theory not pursued at trial. *Id.* at 200-01.
3   Several Supreme Court notice cases make abundantly clear that the issue requires
4   a functional analysis on the part of a reviewing court, extending well beyond the
5   four corners of the charging document. *See, e.g., In re Oliver*, 333 U.S. 257, 275,
6   68 S.Ct. 499, 92 L.Ed. 682 (1948) (reversing criminal contempt conviction
7   because the defendant did not have a "reasonable opportunity" to meet the charges
8   against him). As the Magistrate correctly recognized, "the Constitution 'speaks
9   not of form, but of substance' in providing a defendant with notice of the criminal
10  charge." (R&R at 17, quoting *Gautt v. Lewis*, 489 F.3d 993, 1009 (9th Cir.
11  2007)). Numerous Supreme Court cases, followed by numerous Ninth Circuit
12  cases, clearly establish the constitutional principle that "a person cannot incur the
13  loss of liberty for an offense without notice *and a meaningful opportunity to*
14  *defend*" (*Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560
15  (1979) (emphasis added). (*See* Petition Memo., doc. 7, at 35-43 (citing cases).)
16  *See also Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80
17  L.Ed.2d 674 (1984) (a fair trial is "one in which evidence subject to *adversarial*
18  *testing* is presented to an impartial tribunal for resolution of *issues defined in*
19  *advance of the proceeding*") (emphasis added). Respondent simply asks this
20  Court to turn a blind eye to the whole purpose of the Constitution's requirement of
21  fair notice, namely, the right of an accused to adequately prepare his defense.
22  Controlling case law, however, precludes such approach.
23      As to respondent's notion that, because the Supreme Court has never
24  specifically held that a defendant is entitled to notice of the prosecution's theory of
25  the case, the state appellate court could not have unreasonably applied clearly
26  established federal law within the meaning of 28 U.S.C. § 2254(d)(1), there are
27  two dispositive responses. *First*, in light of the legal principles clearly established
28  by the Supreme Court in cases such as *Cole, Oliver*, and *Strickland*, such

1   specificity is not required.  This is what the Supreme Court itself has said on the

2   subject: "AEDPA does not require state and federal courts to wait for some nearly

3   identical factual pattern before a legal rule must be applied."  *Panetti v.*

4   *Quarterman*, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (internal

5   citations and quotation marks omitted); *see also id.* ("even a general standard may

6   be applied in an unreasonable manner").  AEDPA permits relief if a state court

7   "either unreasonably extends a legal principle from [Supreme Court] precedent to

8   a new context where it should not apply *or unreasonably refuses to extend that*

9   *principle to a new context where it should apply*."  *Williams v. Taylor*, 529 U.S.

10  362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (emphasis added).  " '[C]learly

11  established Federal law' under § 2254(d)(1) *is the governing legal principle or*

12  *principles* set forth by the Supreme Court at the time the state court renders its

13  decision."  *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144

14  (2003) (citations omitted, emphasis added); *see also id.* at 76 (affirming that

15  AEDPA does not prohibit federal habeas courts from finding an application of a

16  principle unreasonable when it involves a set of facts "different from those of the

17  case in which the principle was announced").

18      This is what the Ninth Circuit has said: a habeas petitioner "need not

19  produce a 'spotted calf' on the precise issue at hand to warrant habeas relief."

20  *Bradley v. Duncan*, 315 F.3d 1091, 1101 (9th Cir. 2002); *see also Fisher v. Roe,*

21  263 F.3d 906, 914 (9th Cir. 2001) (holding Supreme Court law "clearly

22  established" because Supreme Court "set forth a working constitutional standard

23  by which to evaluate [the claim] at issue").

24      *Second*, the "clearly established" requirement applies only to 2254(d)**(1)**

25  review.  The state appellate court's decision also easily passes petitioner through

26  the *alternative* 2254(d)**(2)** gateway. The state court's *factual* findings — that

27  petitioner had adequate pretrial notice of the vicarious-liability theory that the

28  prosecution introduced after the close of evidence and that he had an adequate

1  opportunity to defend against it — are themselves so patently and objectively

2  unreasonable that said unreasonableness cannot be the subject of fairminded

3  disagreement.  The Magistrate correctly so concluded.  (*See* R&R at 25-26.)  The

4  hearsay testimony at the preliminary hearing — an investigator's reporting a

5  jailhouse informant's statements — that the state appellate court found sufficient

6  to put petitioner on notice that he must defend against an aiding-and-abetting

7  theory did no such thing.  Whether that is because, as petitioner contended (*see*

8  Petition Memo. at 48-53, including quotation of that testimony in full), that

9  testimony did not itself adequately provide such notice, or, as the Magistrate

10  concluded (R&R at 20-25), whatever notice the preliminary hearing testimony

11  could have potentially provided was abrogated once the trial court barred the

12  parties from referencing the informant's testimony upon his refusing to testify, the

13  conclusion is ineluctable that petitioner did *not* receive constitutionally adequate

14  notice, as amply demonstrated by the fact that he put on no defense to the

15  alternative theory.  Respondent's arguments based on the purported insufficient

16  specificity of the "clearly established" federal law relied on by petitioner are

17  unavailing in the face of this objectively unreasonable state court fact-finding.

18      Finally, respondent accuses the *Magistrate*, in relying on the trial court's

19  barring the parties from referencing the informant's testimony to establish the

20  requisite lack of notice, of unreasonably determining the facts.  (Objections at 8.)

21  This is so, according to respondent, because the trial court "never precluded the

22  prosecutor from calling the informant as a witness," "never precluded the

23  prosecutor from advancing an aiding-and-abetting theory at trial with witnesses

24  other than the informant," and "the prosecutor never stated that he absolutely

25  would not call the informant as a witness or present an aiding-and-abetting theory

26  at trial."  (*Id.*)  The Magistrate, however, fully understood all of that, but correctly

27  understood that such facts did not defeat petitioner's claim:

28                                              / /

1  When the trial judge ruled on the informant issue, it was

2  "reasonable to conceive" that Petitioner would defend

3  the case on the only theory advanced by the prosecution

4  and of which he had notice: whether Petitioner was the

5  assailant who killed the victim.  *See Lee*, 419 Fed. Appx.

6  at 765.  The prosecution confirmed that "common

7  understanding" throughout the trial.  *See Gautt*, 489 F.3d

8  at 1010.  The prosecutor directly accused Petitioner of

9  striking the killing blow, vigorously disputed the medical

10  evidence that the defense put forward to show that

11  Petitioner was physically incapable of committing the

12  attack, and attempted to dissect Petitioner's alibi for the

13  day of the crime.  Additionally, the prosecutor told the

14  trial court toward the end of the government's case that

15  the informant would not testify.  The prosecution's

16  actions during the trial assured Petitioner that he was

17  accused of committing the murder directly, and not

18  because he assisted anyone else.  As a result, the

19  evidence that Petitioner presented in his defense and in

20  questioning government witnesses only went toward

21  refuting that allegation.  *See Murtishaw*, 255 F.3d at 954

22  (analyzing defendant's "actions at trial" to evaluate

23  whether he had notice of theory of government's case).

24  [¶]  Petitioner was indisputably "taken by surprise" when

25  the prosecution asked for an aiding-and-abetting

26  instruction after the close of evidence.

27  (R&R at 22.)  There was no unreasonable determination of facts on the

28  Magistrate's part, only unreasonable attacks on those findings by the respondent.

## C.    Respondent's *Teague* Defense Fails

Respondent also now relies on a defense based on *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), namely, that the Magistrate (and hence, petitioner) has relied on a "new rule of criminal procedure not compelled by the Constitution or the United States Supreme Court."  (Objections at 1.)  Petitioner has three responses.

*First,* respondent's *Teague*-based argument is entirely a function of its first argument.  (*See* Objections at 10 ("There is no controlling United States Supreme Court authority holding that a criminal defendant has a right to notice of all theories the prosecution intends to present at trial.  Accordingly, a rule requiring the prosecutor to provide such notice would be a new rule of criminal procedure barred by *Teague*.").)  Because, as explained in the previous subsection, respondent is wrong about the controlling Supreme Court authority, he is also wrong about his *Teague* argument.

*Second*, even were that not so, respondent would still be wrong in his reliance on *Teague*.  A rule is not "new" within the meaning of that case merely because it involves a factual situation different from that in the case that announced the rule.  As the Ninth Circuit has explained:

> *Teague* does not ... require a habeas petitioner to show that the Supreme Court has decided a case involving identical facts, circumstances, and legal issues.  Rather, when a general rule must be applied in a new situation, it can hardly be thought to have created a new principle of constitutional law.

*Butler v. Curry*, 528 F.3d 624, 634 (9th Cir. 2008) (citation, internal quotation marks, and brackets omitted).  Far from relying on a new rule, petitioner is relying on a hoary rule with a longstanding pedigree.  *See, e.g., Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531 (1864) ("Common justice requires that no man shall be

1  condemned in his person or property without . . . an opportunity to make his
2  defence.").

3       *Third*, this Court should find the *Teague* argument waived in any event.  It
4  applies just as much to petitioner's claim as it does to the Magistrate's resolution
5  of the claim, but respondent failed to raise the defense in either his Answer or
6  Answer Memorandum.  As the Ninth Circuit wrote in *Boardman v. Estelle*, 957
7  F.2d 1523 (9th Cir. 1992) (*per curiam*) (holding that state waived its *Teague*
8  defense by raising it for first time in petition for rehearing):

9           We will not save the state from such a gaffe. The
10          Supreme Court has enforced strict procedural forfeitures
11          on habeas petitioners in the interests of efficient and
12          final adjudication.  Why should not the state be similarly
13          held to a pedestrian rule of appellate procedure?
14          Concerns of federalism and respect for a state's criminal
15          judgments are marginal here because the state brought
16          the problem on itself.

17  *Id.* at 1537; *see also United States v. Howell*, 231 F.3d 615 (9th Cir. 2000)
18  (applying analogous rule to arguments raised for first time in objections to
19  Magistrate's R&R).

20       **D.    The Constitutional Violation Prejudiced Petitioner**

21       Petitioner has already discussed the prejudice issue at length.  (Petition
22  Memo. at 57-65.)  He will address herein respondent's particular arguments set out
23  in his Objections.

24                              / /
25                              / /
26                              / /
27                              / /
28                              / /

**Case No.  SA CV 11-01076 ODW (MRW)**
**Petitioner's Response re Objections**                    9

1.   **The Absence of Overwhelming Evidence of Guilt Is Apparent in the Record, as the Prosecutor, the Trial Court, the State Appellate Court, and the Magistrate All Agree**

Respondent faults the Magistrate for "fail[ing] to consider the prosecutor's actual theory of the case — that Smith alone murdered his wife — and the overwhelming evidence that supported that theory." (Doc. 17 at 13.)  Respondent apparently reaches that conclusion because the R&R "fails to mention" all the evidence relied on by the prosecution to argue petitioner's guilt. (*Id.* at 18.)  As an initial matter, that conclusion does not follow from that premise.  The Magistrate wrote, "The evidence at trial of Petitioner's guilt was not overwhelming." (R&R at 2.)  It hardly bears stating that he would not have made that determination without considering the issue.  The Magistrate was under no obligation in drafting the R&R to summarize and address each item of evidence, but, nonetheless, it contained an entirely accurate summary of the most critical facts upon which the prosecution's case rested. (*Id.* at 3.)

Unlike respondent, the Magistrate *also* summarized the evidence upon which the defense case rested. (R&R at 3-4.)  *That* is how a reviewing court properly determines whether evidence of guilt is overwhelming — it looks at *all* the evidence in the case, not just that of the state. *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), a unanimous decision authored by Justice Alito, is instructive on that point.  There, the Court ordered the vacating of the defendant's murder and other convictions based on the state's exclusion of defense-proffered evidence of third-party culpability.  In rejecting the defendant's appeals, the state supreme court had relied on the state's forensics evidence, which, if believed, strongly pointed to the defendant's guilt.

Among other problems that the Supreme Court had with the state court's approach was the latter court's refusal to examine at all *the defense response* to

1   that evidence.  *See id.* at 329 ("[I]n evaluating the prosecution's forensic evidence

2   and deeming it to be 'strong' — and thereby justifying exclusion of petitioner's

3   third-party guilt evidence — the South Carolina Supreme Court made no mention

4   of the defense challenges to the prosecution's evidence."); *see also id.* at 330

5   ("[T]he true strength of the prosecution's proof cannot be assessed without

6   considering challenges to the reliability of the prosecution's evidence.").  As the

7   Court summarized it, "The point is that, by evaluating the strength of only one

8   party's evidence, no logical conclusion can be reached regarding the strength of

9   contrary evidence offered by the other side to rebut or cast doubt." *Id.* at 331.

10  Yet, respondent chides the Magistrate for not following respondent's suggestion

11  of evaluating only the state's evidence.  It is, obviously, respondent's approach

12  that is illogical, and, as just seen, contrary to that of the Supreme Court.

13       There is another critical point with respect to the purported overwhelming

14  evidence of guilt left unacknowledged by respondent (for obvious reason): the

15  Magistrate was only agreeing with the prosecutor, the trial court, and the state

16  appellate court that the evidence was *not* overwhelming on "the prosecutor's

17  actual theory of the case — that Smith alone murdered his wife" (Objections at

18  13).  As petitioner has already pointed out (Petition Memo. at 58-59), it was

19  precisely *because* the prosecutor was concerned that the jury would acquit

20  petitioner because it did not accept the direct-perpetrator theory — a concern

21  necessarily based on the prosecutor's view of the insufficiency of his proof — that

22  he requested the alternative vicarious-liability theory.  As the Ninth Circuit has

23  expressly recognized, it is the prosecutor who best knows the strengths and

24  weaknesses of his own case. *Singh v. Prunty*, 142 F.3d 1157, 1163 (9th Cir.

25  1998).  The prosecutor's 11th-hour gambit of introducing an entirely new theory

26  of guilt into the case reflected his assessment that, at the end of the day, he might

27  well have failed to prove the central accusation on which petitioner had been

28  charged and tried.

**Case No.  SA CV 11-01076 ODW (MRW)**
**Petitioner's Response re Objections**                    11

1  It was precisely because the trial court agreed with the prosecutor's
2  assessment that it granted his request for instruction on the alternative theory of
3  liability.  It was quite candid about this:

4      There is a reasonable interpretation of the evidence, in
5      the court's view, where the jury can go back and say,
6      jeez, the defense put on all that testimony and evidence
7      about Mr. Smith's injury and how he – his shoulder was
8      so debilitated he couldn't have swung this object in such
9      a way as to cause her death, so we don't find him to be
10     the person that struck the blow.

11  (15 RT 2886; *see also* 15 RT 2887 (trial court's noting that defense had presented
12  "strong case[] casting doubt on his ability to inflict the blows that caused her
13  death").)  For its part, the state appellate court also explicitly recognized this
14  obvious fact.  (*See* Petition Memo, Ex. A, at 9 (noting petitioner had presented "an
15  arguably successful defense concerning his identity as the perpetrator of a
16  crime").)

17  Thus, respondent comprises a minority of one in viewing the state's
18  evidence of guilt as overwhelming.  The prosecutor, the trial court, the state
19  appellate court, the Magistrate, and, of course, petitioner, all agree the truth is to
20  the contrary.  So should this Court.

21      **2.      The Relative Brevity of the Prosecutor's Reliance in**
22      **Closing Argument on His Vicarious-Liability Theory**
23      **Does Not Render the Constitutional Violation**
24      **Harmless Under the *Brecht* Standard**

25  In addition to arguing overwhelming evidence of guilt, respondent also
26  argues that the relative brevity of the prosecutor's comments in closing with
27  respect to the alternative theory of liability is an independent indicium of
28

**Case No.  SA CV 11-01076 ODW (MRW)**
**Petitioner's Response re Objections**                    12

1  harmlessness.  (Objections at 14.)[2]  This is what the prosecutor argued to the jury:

2      [L]et's say three of you get back in the deliberations and

3      say, I just don't know. . . .  I know he's in on it, but I'm

4      not sure that he could have wielded that weapon.  Well,

5      guess what?  You don't have to be.  And that's the law

6      . . . .  You do not even need to be present.  We can talk

7      about alibis and time of death and windows of

8      opportunity and everything else until we're blue in the

9      face. . . .  The prosecution theory: He killed her before he

10     left the house and he went to work.  Does it matter if you

11     buy that theory?  He doesn't even have to be the one who

12     wielded the murder weapon. . . .  [H]alf of you can think

13     it was one way and the other half think it's the other way,

14     doesn't matter.  That's still a guilty verdict.

15 (16 RT 3111-13.)[3]

16       In light thereof, it matters not at all with respect to prejudice that the

17 prosecutor spent the majority of his closings on his direct-perpetrator theory.  No

18 reasonable juror would have missed the import of the prosecutor's words.  He

19 informed the jury that it could find Smith's entire defense credible and conclude

20 Smith did not murder his wife, but *still* convict him of first-degree murder.  It is

21 difficult to posit a more prejudicial argument, and the fact that it took little time to

22 make is utterly irrelevant.  "[C]losing argument matters [and] statements from the

23 ─────────────

24 [2] This argument is actually a concession of sorts as, previously, respondent argued

25 that the prosecutor had not relied on the alternative theory at all (Answer Memo. at

26 18, 20).

27 [3] The foregoing quotation is just a portion of what the prosecutor had to say on the

28 subject.  His argument is quoted more fully in the Petition Memorandum, at 29-32.

1   prosecutor matter a great deal." *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th

2   Cir. 1993) (Kozinski, J.).  The fact that the prosecutor held off on arguing the

3   vicarious-liability theory until his rebuttal closing, at a time when petitioner's

4   counsel would have no opportunity to respond and just before the jury was to

5   begin deliberations, only exacerbated the prejudice.  *See, e.g., United States v.*

6   *Sanchez,* 659 F.3d 1252, 1259 (9th Cir. 2011) (finding reversible error in

7   prosecutor's remarks made in rebuttal closing argument, in part because the timing

8   was "likely to be significant"); *United States v. Holmes*, 413 F.3d 770, 776 (8th

9   Cir. 2005) ("The potential for prejudice is great during closing arguments,

10  especially when the defense has no opportunity for rebuttal.").

11          **3.      That the Prosecutor Secured the Instruction on Its**

12                  **New Theory Prior to Closing Arguments Does Not**

13                  **Vitiate the Prejudice Suffered by Petitioner**

14          Respondent has one additional argument why the error at issue does not

15  meet the *Brecht* prejudice standard, namely, that Smith actually had an opportunity

16  to respond to the prosecution's alternative theory of liability.  (Objections at 14.)

17  This is so, according to respondent, because the parties had been informed prior to

18  closing arguments that the trial court would instruct on that theory, and, therefore,

19  Smith's counsel had opportunities to meet it, albeit ones not taken (e.g., asking for

20  a continuance, asking to re-open the evidence).  (*Id.* at 12-13.)

21          That argument is misplaced for numerous reasons.  *First,* a few hours'

22  notice of the instruction that violated due process does not mean that the

23  instruction, and prosecutorial argument based thereon, did not have a substantial

24  and injurious impact upon the jury verdict.  That is the material question, and

25  respondent's argument does not answer it.  The argument is misdirection.

26          *Second*, no obligation devolves upon a *defendant* to mitigate the damage

27  caused by constitutionally inadequate notice (and, thus, it is no surprise that

28  respondent cites no authority to support its position).  Were that not the case, a

1   defendant's right to pretrial notice of the charges against him would be wholly

2   eviscerated.  The due process protection would be reduced to nothing more than

3   an entitlement to a brief break at the close of a trial to scramble to meet a surprise

4   theory of guilt sprung upon him after the evidence has closed.  If that were so,

5   prosecutors could routinely seek and obtain instruction on uncharged offenses at

6   instructional conferences subject only to a defendant's right to then request a

7   continuance.  That is not how things work.  *Gray v. Raines*, 662 F.2d 569, 575

8   (9th Cir. 1981) (statutory rape conviction voided by failure to notify defendant he

9   could be convicted of that offense until instruction conference)

10      *Third*, California law specifically makes that point clear.  In *In re Robert G.*,

11  31 Cal.3d 437, 441, 182 Cal.Rptr. 644 (1982) , for example, a minor was charged

12  with assault with a deadly weapon because he threw rocks at a school custodian.

13  The rocks proved too small to constitute a deadly weapon, so, at the close of the

14  evidence, the prosecutor sought and obtained a judgment that the minor was guilty

15  of battery, an offense neither charged nor necessarily included within the charged

16  offense.  In reversing, the California Supreme Court did not suggest the deficiency

17  could have been cured by a request for a continuance, but instead observed that,

18  "It may never be known with any confidence after a conviction what defenses

19  might have been asserted had defendant been given adequate and advance notice

20  of the possible offense for which he was criminally vulnerable."  That should be

21  obvious.

22      *Fourth,* in this *particular* case, it is extremely disingenuous for respondent

23  to rely at all on the defendant's failure to seek a continuance once ambushed with

24  the new prosecutorial theory because the trial court had already made clear it

25  would grant no continuances.  On the day before the prosecution sprang its request

26  for the aiding-and-abetting instruction on the defense, petitioner's counsel had

27  attempted to call a bio-mechanics expert witness.  That witness had not been

28  previously disclosed to the prosecution because, the defense asserted, the need for

**Case No.  SA CV 11-01076 ODW (MRW)**
**Petitioner's Response re Objections**                     15

1  him had become evident only late in the trial.  (RT 2691-94.)  The prosecutor

2  immediately responded that he could not effectively prepare for the witness on

3  such short notice.  (RT 2694-95.)  The trial court promptly ruled that the defense

4  could not call the expert, justifying that ruling on the ground that his testimony

5  would have entitled the prosecution to a continuance, at a point when the court

6  and parties "were on the verge of losing two, possibly four other jurors," which the

7  court could not risk.  (RT 2700.)  Had the defense moved for a continuance a day

8  later to respond to the vicarious liability theory introduced by the prosecution that

9  day, that motion would have been denied.

10      *Fifth*, as the defense argued, "by giving this instruction, merely because the

11  defendant has presented evidence that he personally couldn't have committed the

12  crime, it's inviting the jury to speculate about a universe of possibilities for which

13  there's absolutely no evidence....  [I]t's going to do nothing but invite the jurors to

14  speculate."  (RT 2884-85.)  A continuance could not have remedied the specter of

15  a speculative verdict.

16      *Sixth*, respondent overlooks the not insignificant fact that the prosecutor

17  held off arguing his new theory until his rebuttal argument.  Knowing that the

18  instruction was to be given, and knowing what the prosecutor was going to argue,

19  are two different things.

20                              **CONCLUSION**

21      At the end of the day, through all of respondent's sound and fury and the

22  thicket of AEDPA review, the simple, glaring facts should remain indisputable to

23  fairminded jurists – petitioner had fashioned his entire defense to the lone theory

24  of which he *did* receive notice; the state ambushed petitioner with a new theory of

25  guilt following the close of evidence; and petitioner's defense was rendered utterly

26  meaningless by the successful ambush.  In light thereof, the Magistrate's

27  recommendation to grant habeas relief is the lone legally sound one.

28                                // /

1    For all the foregoing reasons, and all those set out in the Petition, its

2 supporting Memorandum, the Traverse, its supporting Memorandum, and the

3 R&R, this Court should conduct a *de novo* review of the case, adopt the R&R in

4 full, grant the Petition, and order the Clerk of the Court to enter judgment in favor

5 of petitioner.

6 Dated: April 16, 2011                          Respectfully submitted,

7                                                RIORDAN & HORGAN

8                                                /s/ Dennis P. Riordan

9                                                By: Dennis P. Riordan

10                                               Counsel for Petitioner
                                                 MARVIN VERNIS SMITH